O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

GUILLERMO ALVAREZ, JR., ) Case No. CV 10-8284-SP
)
    Plaintiff, )
)
    v. ) **MEMORANDUM OPINION AND ORDER**
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )
Administration, )
)
    Defendant. )
)

## I.
## INTRODUCTION

On November 10, 2010, plaintiff Guillermo Alvarez, Jr. filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance Benefits ("DIB"). Docket No. 3. Both plaintiff and defendant have consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Docket Nos. 19, 21.

Pursuant to the November 16, 2010 case management order, the parties submitted a detailed, 17-page joint stipulation for decision on June 9, 2011. Docket No. 23. The court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, inter alia, the parties' joint stipulation and the administrative record, the court concludes that, as detailed herein, the Administrate Law Judge ("ALJ") erred in evaluating the medical evidence, and inappropriately discounted plaintiff's credibility and his subjective complaints. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 42 years old on the date of his February 2, 2009 administrative hearing, has a ninth grade education and training in photography. *See* Administrative Record ("AR") at 24, 27, 28, 52. His past relevant work includes employment as an automobile detailer, courier delivery driver, and photographer. *Id.* at 52.

On August 22, 2007, plaintiff filed an application for DIB, alleging that he has been disabled since July 27, 2005 due to hypertension, high blood pressure, a back injury, and dyslexia. *See* AR at 65, 101-04. Plaintiff's application was denied initially, after which he filed a request for a hearing. *Id.* at 61, 65-70, 71-72.

On February 2, 2009, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 24-50, 52-53. The ALJ also heard testimony from Jeanine Metildi, a vocational expert ("VE"). *Id.* at 50-59.

On February 19, 2009, the ALJ denied plaintiff's request for benefits. AR at 14-21. Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability. *Id.* at 16.

At step two, the ALJ found that plaintiff suffers from severe impairments consisting of "status post right knee arthroscopic surgery (chondroplasty/debridement and meniscectomy); and lower back pain." AR at 16 (emphasis omitted).

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1] AR at 17.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[2] and determined that he can perform light work with the following limitations: "occasionally lift up to 20 pounds and frequently lift up to 10 pounds"; "stand or walk for approximately 4 hours per 8-hour workday, with normal breaks; and sit for approximately 4 hours per 8-hour workday, with normal breaks"; "occasionally operate foot controls with the right lower extremity"; "cannot climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs"; "occasionally stoop, but cannot kneel, crouch or crawl"; "can use a hand-held assistive device when walking on uneven terrain or ascending and descending slopes"; "must avoid concentrated exposure to extreme vibration and all exposure to hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions." AR at 17 (emphasis omitted).

The ALJ found, at step four, that plaintiff is unable to perform any past relevant work. AR at 19.

At step five, based upon plaintiff's vocational factors and RFC, the ALJ found that "there [are] jobs that exist[] in significant numbers in the national economy that [plaintiff can] perform." AR at 20 (emphasis omitted). Thus, the ALJ concluded

---

[1] See 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

that plaintiff was not suffering from a disability as defined by the Social Security Act. *Id.* at 14, 21.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR at 1-3, 9. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Two disputed issues are presented for decision here:

(1) whether the ALJ properly evaluated the medical evidence; and

(2) whether the ALJ properly evaluated plaintiff's credibility and subjective symptoms. Joint Stipulation ("JS") at 3-5, 5-11, 11-12, 12, 12-15, 15.

## V.
## DISCUSSION

A. The ALJ Erred in Evaluating the Medical Evidence

Plaintiff asserts that the "ALJ erred in failing to find that [plaintiff] also has severe impairments of a right wrist disorder, obesity, a heart condition[,] and hypertension." JS at 3. Plaintiff further suggests that the ALJ's errors in evaluating the medical evidence resulted in error in determining plaintiff's RFC. *Id.* at 5.

The threshold inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The step two inquiry is defined as "'a de minimis screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). "At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90 (citation omitted). Although plaintiff claims the ALJ erred in finding plaintiff's only severe impairments were to his knee and back (*see* JS at 5), any error in so limiting the findings of severe impairments would be harmless, given that the ALJ ruled in plaintiff's favor at step two. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error the ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Taylor v. Astrue*, 2010 WL 2773337, at *3 (D. Or. 2010) (any error in failing to designate plaintiff's additional impairments as not severe did not prejudice him at step two, as step two was resolved in plaintiff's favor

because the ALJ found plaintiff had demonstrated several impairments necessary to satisfy step two).

More critical is plaintiff's apparent contention that the ALJ erred in assessing plaintiff's RFC, with the gaps in his findings leaving it "unclear as to how the ALJ arrived at his assessment." JS at 5. In determining a claimant's RFC, the ALJ must consider all the relevant evidence, including the diagnoses, treatment, observations by the treating physicians, medical records, and relevant non-medical evidence. *See* Social Security Ruling ("SSR") 96-5,[3] 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a).

Plaintiff argues that records from treating physician Simon Lavi, D.O., submitted by plaintiff on February 4, 2009, demonstrated left shoulder impingement syndrome and right wrist sprain with carpal tunnel syndrome, and that these medical findings were not properly evaluated by the ALJ. *See* JS at 4. The court agrees. Although these diagnoses are not new and were made by Dr. Lavi in records that were reviewed by examining internist Rocely Ella-Tamayo, M.D. and the non-examining State Agency evaluator,[4] the ALJ erred in failing to provide any legally sufficient reasons for disregarding Dr. Lavi's opinion.

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

[4] *See* AR at 183, 187, 191, 195, 200, 205-06, 216, 220, 224, 228-29, 233, 237, 241, 245, 249, 253, 257, 260, 270, 280, 299-300, 310-11.

6

1 the claimant (examining physicians); and (3) those who neither examine nor treat the
2 claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
3 1996); *see also* 20 C.F.R. § 404.1527(d) (prescribing the respective weight to be
4 given the opinion of treating sources and examining sources). "As a general rule,
5 more weight should be given to the opinion of a treating source than to the opinion
6 of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *accord Benton ex
7 rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a
8 treating physician "is employed to cure and has a greater opportunity to know and
9 observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th
10 Cir. 1987). "The opinion of an examining physician is, in turn, entitled to greater
11 weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

12 Where the treating physician's "opinion is not contradicted by another doctor,
13 it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at
14 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the
15 ALJ may disregard the opinion of a treating physician, whether or not controverted,
16 the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear
17 and convincing reasons."). "Even if the treating doctor's opinion is contradicted by
18 another doctor, the [ALJ] may not reject this opinion without providing specific and
19 legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d
20 at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at
21 725. The ALJ can meet the requisite specific and legitimate standard "by setting out
22 a detailed and thorough summary of the facts and conflicting clinical evidence,
23 stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881
24 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

25 Here, in his decision, although the ALJ stated that he gave substantial weight
26 to Dr. Lavi's opinion, he implicitly rejected Dr. Lavi's findings with respect to
27 plaintiff's shoulder and wrist without actually stating he was doing so. The ALJ
28 erred by failing to provide any reason, let alone a specific and legitimate one, for

disregarding Dr. Lavi's opinion regarding plaintiff's right wrist disorder and shoulder impairment. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988) ("We find nothing in the ALJ's decision which indicates why [the treating physician's] medical findings, reports, and opinion were disregarded. Because the ALJ did not state reasons based on substantial evidence, we reverse the decision to deny benefits.").

Having determined that the ALJ erred in providing no reasons for implicitly rejecting the treating physician's opinion regarding plaintiff's wrist and shoulder impairments, the court will not reach the question of whether the ALJ also erred in evaluating the medical evidence of plaintiff's heart disease, hypertension, and obesity. Although the ALJ clearly did address and consider the medical evidence with respect to these latter medical problems (*see* AR at 18-19), the court need not decide whether the ALJ's evaluation of these problems was adequate. For the reasons discussed below, on remand the ALJ should reassess all the medical opinions in the record.

  B. <u>The ALJ Improperly Discounted Plaintiff's Credibility and Subjective Complaints</u>

Plaintiff argues that the ALJ failed to properly assess his credibility and improperly disregarded his allegations of subjective symptoms. *See* JS at 12,15. Specifically, plaintiff maintains that the ALJ failed to "provide legally sufficient reasons for rejecting plaintiff's testimony." *Id.* at 12. The court agrees.

Plaintiff carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton*, 331 F.3d at 1040. But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] claimant need not present clinical or diagnostic evidence to support the severity of his pain."

(internal citation omitted)).

Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. *See generally* AR at 14-21. Thus, in rejecting plaintiff's credibility the ALJ must have articulated clear and convincing reasons. *See Benton*, 331 F.3d at 1040. The court is persuaded that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's credibility and subjective complaints.

First, the ALJ erred to the extent he rejected plaintiff's credibility based on a lack of objective medical evidence. *See* AR at 18-19. Plaintiff provided sufficient medical evidence of underlying impairments that were reasonably likely to cause the symptoms he described. For instance:

1. A medical evaluation note, dated November 6, 2006, noted plaintiff's shoulder, wrist, knee, ankle, and back pain, and opined that: plaintiff's low back problem "preclude[s plaintiff] from heavy lifting and frequent ending and stooping"; plaintiff's right knee impairment "precludes running, jumping, performing more than occasional squatting or kneeling, or walking in precarious situations"; plaintiff "should not perform rep[etitious] climbing or descending of stairs, nor should he climb ladders"; plaintiff "should not walk over irregular terrain"; and the right knee condition "requires the use of a cane and a knee support." AR at 215.

2. A magnetic resonance imaging ("MRI") of plaintiff's lumbar spine on

June 8, 2007 revealed "[b]road-based disc protrusion at L4-L5 measuring 3 mm," which causes "mild narrowing of the left lateral recess." AR at 187. The MRI also revealed an "[a]nnular tear in the left side of the L5-S1 disc with posterior broad-based disc protrusion versus diffuse posterior disc bulge." *Id.*

3. An internal medicine evaluation note, dated April 1, 2008, diagnosed plaintiff with hypertension, status post arthroscopic surgery right knee with residual pain, low back pain, and obesity. AR at 303.

4. A treatment note, dated August 8, 2007, diagnosed plaintiff with hypertensive heart disease. AR at 289. The note also indicated that plaintiff's blood pressure is uncontrolled due, in part, to poor medical compliance and in part due to pain from his knee surgery. *Id.*

Because plaintiff produced sufficient medical evidence of underlying impairments that are likely to cause plaintiff's limited strength, difficulty in standing, walking or sitting, the ALJ erred to the extent he rejected plaintiff's credibility based upon a lack of objective findings to support his allegations. *See Bunnell*, 947 F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." (citation omitted)); SSR 96-7P, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Second, the ALJ's rejection of plaintiff's credibility based on his daily activities is not supported by substantial evidence. The ALJ found that plaintiff's subjective complaints are undermined by his ability to "attend[] to his own personal care needs, walk[] his children to school, do[] light chores." AR at 19. But plaintiff explained that he only walks his kids from their house to the bus stop at the corner,

1  which is approximately 50 yards from his house. *Id.* at 44, 129.  Plaintiff also
2  explained that he has difficulty "taking care of his own personal hygiene" and
3  requires his wife's help to bathe. *Id.* at 44.  Moreover, although plaintiff stated that
4  he is capable of doing light chores around the house, he also stated that he is only
5  able to do it a few minutes at a time. *Id.* at 129.  Thus, the ALJ's paraphrasing of
6  plaintiff's daily activities is not entirely accurate. *See Reddick*, 157 F.3d at 722-23
7  ("[T]he ALJ developed his evidentiary basis by not fully accounting for the context
8  of materials or all parts of the testimony and reports.  His paraphrasing of record
9  material is not entirely accurate regarding the content or tone of the record.");
10 *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the
11 power of the [Commissioner] to make findings . . . and to weigh conflicting
12 evidence, he cannot reach a conclusion first, and then attempt to justify it by
13 ignoring competent evidence in the record that suggests an opposite result." (internal
14 citation omitted)).

15      Further, the ALJ fails to demonstrate how plaintiff's ability to perform these
16 daily activities translates into an ability to do activities that are transferrable to a
17 work setting. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ
18 errs in failing to make a finding to the effect that ability to perform daily activities
19 translated into the ability to perform appropriate work); *Reddick*, 157 F.3d at 722
20 (only if a plaintiff's level of activity is inconsistent with her alleged limitations will
21 these activities have any bearing on claimant's credibility); *see also Vertigan v.*
22 *Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has
23 carried on certain daily activities, such as grocery shopping, driving a car, or limited
24 walking for exercise, does not in any way detract from her credibility as to her
25 overall disability").

26      Defendant argues the ALJ found that plaintiff's credibility is undermined by
27 his failure to follow treatment advice; specifically, plaintiff was noncompliant with
28 his blood pressure medication which contributed to his heart condition. *See* JS at 7.

1 But although the ALJ mentioned plaintiff's poor medical compliance (AR at 18), he
2 did not clearly rely on this as a reason to reject plaintiff's credibility. The court's
3 review is limited to the reasons actually provided by the ALJ in his decision for
4 rejecting plaintiff's credibility. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)
5 ("We review only the reasons provided by the ALJ in the disability determination
6 and may not affirm the ALJ on a ground upon which he did not rely." (citation
7 omitted)). In any event, to the extent the ALJ relied on this reason, the ALJ's
8 conclusion does not meet the clear and convincing standard. A claimant's failure to
9 seek treatment due to inability to pay cannot support an adverse credibility
10 determination. *Orn*, 495 F.3d at 638. A review of the record reveals that the sole
11 reason plaintiff was noncompliant with his medication for high blood pressure was
12 due to his inability to pay for it. AR at 48-49.

## VI.

## **REMAND IS APPROPRIATE**

15      The decision whether to remand for further proceedings or reverse and award
16 benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d
17 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further
18 proceedings, or where the record has been fully developed, it is appropriate to
19 exercise this discretion to direct an immediate award of benefits. *See Benecke v.*
20 *Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172,
21 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns
22 upon their likely utility). But where there are outstanding issues that must be
23 resolved before a determination can be made, and it is not clear from the record that
24 the ALJ would be required to find plaintiff disabled if all the evidence were properly
25 evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211
26 F.3d at 1179-80.
27      Here, as set out above, remand is required because the ALJ erred in failing to
28 properly evaluate both the medical evidence and plaintiff's credibility. On remand,

the ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions.  The ALJ shall also reconsider plaintiff's subjective complaints with respect to his physical impairments and the resulting limitations, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them.  In addition, if necessary, the ALJ shall obtain additional information and clarification regarding plaintiff's functional limitations.  The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VII.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: October 19, 2011

_____
HON. SHERI PYM
UNITED STATES MAGISTRATE JUDGE